IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

K & S REAL PROPERTIES, INC.
    *Plaintiff*,

    v.

OLHAUSEN BILLIARD
MANUFACTURING, INC.
    *Defendant*.

Civil Action No. ELH-15-1199

## MEMORANDUM

In a Complaint filed April 27, 2015 (ECF 1), plaintiff K & S Real Properties, Inc. ("K & S") sued defendant Olhausen Billiard Manufacturing, Inc. ("OBM"), alleging that in October 2008, defendant entered into a Non-Recourse Revolving Line of Credit with K & S (ECF 1-1, the "Note") and, since January 28, 2009, no payment has been made on the Note. ECF 1, ¶ 4. According to plaintiff, the Note was due on October 31, 2013. *Id.* ¶ 5. Plaintiff seeks $600,000 in unpaid principal, interest in excess of $400,000, and attorney's fees. ECF 1 at 2.[1] K & S is represented by the Law Offices of Timothy Guy Smith, P.C. and the Complaint is signed by Timothy Guy Smith.

Plaintiff filed a pre-discovery Motion for Summary Judgment on June 23, 2015, before OBM responded to the Complaint. ECF 7. It is supported by a legal memorandum (ECF 7-1) (collectively, "Motion"); an affidavit by K & S's accountant, John Holsworth (ECF 7-2, "Holsworth Affidavit"); an additional copy of the Note (ECF 7-3); financial statements (ECF 7-4); and an interest computation sheet (ECF 7-5).

---

[1] Jurisdiction is founded on diversity of citizenship. *See* 28 U.S.C. § 1332.

OBM opposes the Motion.  ECF 9, "Opposition."  The Opposition is supported by a Declaration from OBM's President, Donald Olhausen (ECF 9-1, "Olhausen Declaration"), and a Declaration from Nancy Correa (ECF 9-2, "Correa Declaration"),  an attorney with the Watkins Firm, APC, a law firm that has represented OBM for many years.  K & S has replied (ECF 35), supported by a memorandum of law (ECF 35-1) (collectively, "Reply"), as well as exhibits.  *See* ECF 35-2; ECF 35-3; ECF 35-4; ECF 35-5; ECF 35-6; and ECF 35-7.

OBM also filed a Motion to Defer or Deny Plaintiff's Motion for Summary Judgment (ECF 14), supported by a memorandum (ECF 14-2) (collectively, "Motion to Defer").  The Motion to Defer is also supported by the Declaration of Melissa H. Lum, Esq.  ECF 14-1, "Lum Declaration."[2]  Lum, who is "outside counsel" for OBM (*id.* ¶ 1), filed her Declaration pursuant to Fed. R. Civ. P. 56(d).  *Id.*[3]  K & S has not responded to the Motion to Defer.

OBM filed its Answer on July 10, 2015 (ECF 8), which included counterclaims against K & S; Timothy G. Smith, Esquire; and The Law Offices of Timothy Guy Smith, P.C. (the "Smith Firm").  Shortly after, on July 16, 2015, defendant filed an Amended Answer to the Complaint and Amended Counterclaims.  ECF 19, "Amended Answer."[4]  The Amended Answer includes 15 affirmative defenses (ECF 19 at 3–10), and contains five counts against K & S, Smith, and the Smith Firm (Smith and the Smith Firm are collectively referred to as the "Smith Parties").  ECF

---

[2] The Motion to Defer refers to the "Declaration of Nathan Low."  *See, e.g.*, ECF 14-2, ¶ 11.  However, this document was not included in the submission.

[3] Lum has not entered an appearance in this case.

[4] The Amended Answer corrected the name of the law office to Timothy Guy Smith, P.C. Trading as the Law Offices of Timothy Guy Smith.  ECF 19-1 at 1.

19 at 11–22.[5]  The counts are as follows:  fraud, against all three counterdefendants; fraud in the inducement, against all three counterdefendants; legal malpractice, against the Smith Parties; breach of fiduciary duties, against the Smith Parties; and declaratory relief, against all counterdefendants.  ECF 19 at 15–22.

OBM alleges that Smith, who represents K & S in this case, previously served as OBM's legal counsel from 2007 to January 2015, which includes the period when the Note was executed.  ECF 19 at 12, Amended Answer.  According to OBM, Smith advised OBM to execute the Note (ECF 19 at 14), and "the Note [was a] part of a conspiracy and scheme by Attorney Smith and K & S to convert an undisclosed sum from" OBM "and to obtain additional money by wrongfully suing OBM on the Note."  *Id.*

K & S filed an Answer to defendant's counterclaims.  ECF 34.  The Smith Parties filed a motion to dismiss the counterclaims asserted by OBM.  ECF 37.[6]  They maintain in their supporting memorandum (ECF 37-1) (collectively, "Motion to Dismiss") that OBM failed to assert "proper subject matter jurisdiction over" the Smith Parties.  ECF 37-1 at 3–4.  OBM opposes the Motion to Dismiss.  ECF 40, "Opposition-Motion to Dismiss."  Additionally, on November 30, 2015, OBM filed a motion to disqualify K & S's counsel.  ECF 43, "Motion to Disqualify."  Plaintiff opposes the Motion to Disqualify (ECF 45, "Opposition-Motion to Disqualify"), and OBM has replied.  ECF 46, "Reply-Motion to Disqualify."

In sum, four motions are pending before the Court:  K & S's summary judgment Motion (ECF 7); OBM's Motion to Defer (ECF 14); the Smith Parties' Motion to Dismiss (ECF 37); and

---

[5] OBM  joined the Smith Parties pursuant to Fed. R. Civ. P. 13(h), 19(a), and 20.  ECF 19 at 12, Amended Answer.

[6] Plaintiff and the Smith Parties were granted five extensions to file responsive pleadings. ECF 23; ECF 27; ECF 29; ECF 31; ECF 33.

OBM's Motion to Disqualify.  ECF 43.  This Memorandum addresses only plaintiff's Motion (ECF 7) and OBM's Motion to Defer.  ECF 14.  No hearing is necessary to resolve these motions.  *See* Local Rule 105.6.  For the reasons stated below, I shall deny K & S's Motion (ECF 7) as premature, and deny, as moot, OBM's Motion to Defer.  ECF 14.

## I. Factual Summary

The Note is dated October 3, 2008.  ECF 1-1 at 1.  It lists OBM as the "Borrower" and K & S as the "Lender[.]"  ECF 1-1 at 1.  It was signed by Mr. Olhausen for OBM (ECF 1-1 at 3), and witnessed by David Robinson, OBM's chief financial officer.  ECF 7-1, ¶ 3.  According to OBM, at the time the Note was executed, the Smith Parties served as OBM's "legal counsel . . . [and] . . . acted as such from 2007 to January 2015 . . . advis[ing] OBM on a variety of legal and business matters."  ECF 19 at 12, Amended Answer.  However, the Smith Parties now represent K & S in their suit against OBM.

The Note states, ECF 1-1 at 1: "For value received, the undersigned, [OBM] . . . promise [sic] to pay to the order of [K & S] . . . the principal sum of Seven Hundred Fifty Thousand and no/100ths Dollars ($750,000.00), as advanced and re-advanced, with interest at the rate of Eight (8.00%) per annum until paid.  Prior to maturity, the Borrower(s) shall have the right to borrow. . . ."  The Note further provides, *id.*:

> Interest shall be payable monthly on the outstanding principal balance commencing on the 3rd day of November, 2008 and continuing on the 3rd day of each month until the 3rd day of October, 2013, when all principal and unpaid interest is due in full, provided however, Lender shall have the right to demand full payment of all outstanding principal and unpaid interest on each anniversary date of the Note upon thirty (30) days advance written notice to Borrower(s).

The parties agree that OBM borrowed at least $600,000.  ECF 1, ¶ 4; ECF 19 at 3, Amended Answer; ECF 9 at 4, Opposition; ECF 9-1, ¶ 10, Olhausen Declaration.  However, the

parties disagree about the total sum that OBM borrowed under the Note, the Note's genesis, and plaintiff's effort to recover on the Note.[7]

According to K & S, OBM received "drafts . . . as follows: October 10, 2008 - $150,000.00; October 27, 2008 - $250,000.00; January 28, 2009 - $200,000.00."  ECF 1, ¶ 4. Plaintiff alleges that the "failure of the Defendant to make payments as agreed upon in [the] Note amounts to a material default and is otherwise a breach of the contract between the parties." ECF 1, ¶ 7.

OBM contends that K & S provided defendant with "four checks totaling $600,000 from October 2008 to February 2009."  ECF 9-1, ¶ 10, Olhausen Declaration; *see also* ECF 9-1 at 18–25 (including account statements and copies of the four checks defendant received, the last of which is undated, and all of which are signed by Smith); ECF 35-7 at 1–4, Reply (including plaintiff's partial resubmission of defendant's exhibit in ECF 9-1 with copies of *four* checks). However, according to defendant, the "funds purportedly loaned to defendant . . . did not belong to plaintiff."  ECF 19 at 2, Amended Answer.

In support of its assertion, OBM alleges that, during the financial recession, Mr. Olhausen, OBM's president, "decided to withdraw funds from his Individual Retirement Account" ("IRA"), in order to help fund OBM's operations.  *Id.* at 3.  Mr. Olhausen planned to "pay resulting taxes and penalties, and loan the money to OBM."  *Id.*  However, Smith, then serving as OBM's "corporate counsel" (*id.*), "convinced" Olhausen and OBM "not to cash out [the] IRA, but transfer it to a financial firm associated with Attorney Smith, KH Funding

---

[7] The record is not clear as to the precise amount that was borrowed.  The record refers to both $650,000.00 and $600,000.00.  *See, e.g.*, ECF 9 at 4, Opposition ("OBM did in fact receive $600,000 over four installments . . ."); ECF 19 at 14, Amended Answer (discussing four checks that total $650,000.00); ECF 1, ¶ 4 (listing three checks totaling $600,000.00); ECF 9-1 at 18–21, Olhausen Declaration (providing copies of four checks that appear to total $600,000, although the amounts are difficult to decipher).

Company ("KHFC"), and KHFC would then loan the funds back to OBM through a third party." ECF 19 at 3, Amended Answer.

According to defendant, while Smith represented OBM, he "was concurrently [K & S's] president, though this was not disclosed to OBM[.]" *Id.* Defendant asserts: "Attorney Smith explained that KHFC would need to characterize the transfer as a loan to comply with Internal Revenue Service regulations [and] explained that this plan would avoid taxes and penalties on cashing out the IRA." ECF 19 at 3, Amended Answer. Defendant avers that Smith insisted there would be "no obligation to repay the loan until OBM was able to replenish Donald Olhausen's IRA with KHFC." *Id.* Olhausen contends in his Declaration that Smith said "KHFC would 'loan' the funds to a third party, which would 'loan' the funds back to OBM. . . . [I]n this way OBM could access virtually all of [his] IRA funds without taxes and penalties for early withdrawal." ECF 9-1, ¶ 5. Smith advised that "OBM's promissory note would only be to satisfy IRS guidelines." *Id.*

Therefore, Olhausen agreed to follow Smith's plan and "transferred [his] IRA from SunTrust Bank to KHFC in September 2008." ECF 9-1, ¶ 6, Olhausen Declaration. At the time, the IRA held "at least $789,725.40."[8] ECF 19 at 13, Amended Answer. Also in September 2008, and at the direction of Smith, Mr. Olhausen signed two memoranda authorizing KHFC to transfer funds from his IRA account to K & S (ECF 9-1, ¶ 8, Olhausen Declaration; *see also* ECF 9-1 at 14), and to "Timothy G. Smith and Douglas K. Kelly." ECF 9-1, ¶ 9, Olhausen Declaration; *see also* ECF 9-1 at 16. It appears that both memoranda are related to the same transaction. *See* ECF 9-1 at 14, 16, Olhausen Declaration.

---

[8] The amount of $789,725.40 appears to be what was initially transferred to KHFC. ECF 14-1 at 8, Lum Declaration. However, it seems the IRA balance was $828,297 before the transfer occurred on September 11, 2008. *Id.*; *see also* ECF 19 at 13, Amended Answer.

The events following the transfer of IRA funds from KHFC are not immediately clear. *See* ECF 9-1, ¶ 7, Olhausen Declaration; ECF 9-1 at 8 (Mr. Olhausen's IRA transfer request); ECF 14-1 at 8, Lum Declaration.  According to defendant, "on about October 3, 2008, KHFC transferred up to $750,000 of [the total IRA] sum to Attorney Timothy G. Smith himself and Douglas K. Kelly, the principals of plaintiff K & S Real Properties, Inc." ECF 19 at 3, Amended Answer; *see also* ECF 14-1 at 8, Lum Declaration.  It appears that an undisclosed amount was conveyed through a promissory note "guaranteed" by K & S and "secured by [an] Indemnity Deed of Trust dated 10/3/2008."  ECF 14-1 at 8, Lum Declaration; *see also* ECF 9-2 at 20–45, Correa Declaration (providing the Indemnity Deed of Trust).

It is unclear what happened to the funds.  At some point, it seems that an unknown amount totaling at least $600,000 was held by K & S, because at least this amount was transferred to OBM from K & S.  ECF 14-1 at 8, Lum Declaration; ECF 1, ¶ 4.  According to defendant, "Attorney Smith has never accounted for [the] approximate $158,000 shortfall."  ECF 14-1, ¶ 7, Lum Declaration.

Plaintiff has submitted what appears to be a record of payments made to OBM, but the record is difficult to comprehend and does not address the alleged shortfall in funds.  *See* ECF 7-4.  According to defendant, the four checks that it received are "drawn on the joint account of 'KH Funding Company Reserve Account and K. & S. Real Properties, Inc.[']"  ECF 9-1, ¶ 10, Olhausen Declaration; ECF 9-1 at 18–21 (copies of the checks that align with this description). "All checks were signed by Attorney Smith, and the account holder address on the checks matches Attorney Smith's current address."  *Id.*  Additionally, a KHFC account statement submitted by defendant shows a payment of $13,927.50 to "Kugler."  ECF 9-1 at 25, Olhausen

Declaration.  Mr. Olhausen asserts he does "not know who Kugler is or why he received that sum from [his] IRA."  *Id.* ¶ 11.

In Reply, plaintiff asserts that OBM "is attempting to blend several matters into a singular event" and nothing "alter[s] the fact that $600,000.00 was loaned" to OBM.  ECF 35-1 at 2.  K & S contends that "[a]ny and all . . . issues related to Donald Olhausen's IRA related to Donald Olhausen personally, related to conflicts of interest, have no bearing upon the primary issue in this case, namely the loaning of funds and the lack of repayment thereon."  *Id.*  However, plaintiff does not address any of the allegations regarding the Note as part of a scheme to defraud, nor does the Complaint address Smith's role as counsel for OBM.  *See generally* ECF 1, 1-1.

## II. Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.

There is a genuine dispute as to material fact "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.*; *see also Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013); *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

Of import here, in the context of summary judgment, the court does not sit as the trier of fact. The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, on summary judgment the trial court may not make credibility determinations. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Ordinarily, summary judgment is also inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). *See Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) ("Generally, a district court must refuse summary judgment 'where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'") (quoting *Anderson*, 477 U.S. at 250 n.5). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed prior to summary judgment, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)). And, "to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).

A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008). Moreover, denial of additional discovery is appropriate when the materials sought by the requesting party could have been discovered earlier, including in the course of administrative discovery. *See Volochayev v. Sebelius*, 513 F. App'x 348, 351–52 (4th Cir. 2013); *see also Newsom v. Barnhart*, 116 F. App'x 429, 432 (4th Cir. 2004) (affirming district court's denial of discovery request, "[g]iven the breadth of the administrative record"); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 612 (D. Md. 2003) (determining that summary judgment was not premature because a "full and detailed factual record" had already been created).

The party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"   *Harrods*, 302 F.3d at 244 (citations omitted).   On the other hand, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

### III. Discussion

As noted, plaintiff alleges that "[t]he failure of Defendant to make payments as agreed upon in [the] Note amounts to a material default and is otherwise a breach of contract between the parties." ECF 1, ¶ 7.   In its Motion, plaintiff asserts that because "there is no evidence of any payments being made by Olhausen Billiard Manufacturing, and it is undisputed that the Promissory Note was duly executed and that the funds were advanced on the days and times listed . . . Plaintiff is entitled to summary judgment . . . ." ECF 7-1 at 2.

Defendant counters that the Motion should be denied "because the evidence shows that the promissory note at issue is a sham, and the funds purportedly loaned to OBM actually belonged to OBM's president, not plaintiff." ECF 9 at 1–2, Opposition.   Further, OBM posits that it "requires discovery to piece together the events and transactions underlying the promissory note." ECF 9 at 2, Opposition; ECF 14-1, ¶¶ 11–19, Lum Declaration.

Both parties have submitted conflicting affidavits and declarations in support of their positions.   *See, e.g.*, ECF 7-2, Holsworth Affidavit; ECF 9-1, Olhausen Declaration; ECF 9-2, Correa Declaration; ECF 14-1, Lum Declaration.   With its Opposition, defendant has also submitted several exhibits to support its contention that the Motion is premature.   *See* ECF 9; ECF 9-1; ECF 9-2.   Further, defendant filed a Motion to Defer (ECF 14), in which it claims that

summary judgment is premature. To support this assertion, OBM submitted a six-page Rule 56(d) Declaration from Melissa H. Lum, Esq. *See* ECF 14-1.

Lum states, *inter alia*, that OBM "is unable to present certain facts necessary to support its opposition . . . because there has been no discovery of any kind in this matter." *Id.* ¶ 2. She also avers that "evidence of the parties' intent" in entering the Note "may be found in emails or other correspondence[]" and that OBM "intends to propound a request . . . to obtain these records." *Id.* ¶ 11; *see also id.* ¶ 12. Further, Lum states that "OBM needs the opportunity to interview witnesses and obtain documents that show that Attorney Smith intentionally withhold [sic] information from OBM" (*id.* ¶ 14), and that other "[n]ecessary information will be obtained in Attorney Smith's deposition and expert testimony." *Id.* ¶ 19.

Citing OBM's Answer and its Opposition to the Motion, Lum disputes plaintiff's attempt to characterize the case as one involving a "simple and isolated commercial loan transaction." ECF 14-1, ¶ 4, Lum Declaration. Rather, she asserts that the case "is neither simple nor isolated, but part of a complex web of transactions that Attorney Smith devised, implemented, and advised OBM to accept while serving as OBM's general counsel . . . ." *Id.* ¶ 5.

Additionally, Lum sets forth allegations that demonstrate OBM's need for discovery in regard to the many affirmative defenses and counterclaims that OBM advanced. Lum avers that "OBM has had no opportunity to conduct discovery concerning the facts underlying these defenses, and much, if not all of the information is in the possession of Attorney Smith." *Id.* ¶ 10. Further, she states that even though "OBM has limited evidence" of transactions surrounding the Note (*id.* ¶ 13), "[e]vidence in the form of documents and communications, such as emails, exists and may substantiate that there was no consideration for the Note." *Id.* ¶ 12.

K & S has not submitted a response to the Motion to Defer.  But, in its Reply it states merely that the issues raised by defendant "have no bearing upon the primary issue in this case." ECF 35-1 at 2, Reply.  Yet, it has not provided any support for this assertion.

In regard to the matter of prematurity, the Fourth Circuit has said:  "In general, summary judgment should only be granted 'after adequate time for discovery.'"  *McCray v. Md. Dept. of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 322).  In *McCray*, the Fourth Circuit determined, *inter alia*, that the district court abused its discretion in dismissing an action before the plaintiff had an opportunity to conduct discovery in connection with a Rule 56(d) motion.  *Id.* at 483.  The *McCray* Court noted, *id.*:  "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."  The Court reasoned, *id.* at 484 (internal citations omitted):

> Non-movants must generally file an affidavit or declaration before they can succeed on a 56(d) motion, or if not, non-movants must put the district court on notice as to which specific facts are yet to be discovered. In this case, McCray filed such a declaration and identified the material she needed to discover . . . . Similarly, nonmovants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to.  There is no indication that McCray's inability to gather evidence was due to her own delay. In sum, . . . McCray's 56(d) motion should be granted.

*See also Harrods*, 302 F.3d at 246 (noting that nonmovant was entitled to 56(d) protection in part because it "was not dilatory in pursuing discovery").

It is obvious that there are genuine issues of material fact in dispute in this case.  *See, e.g.*, ECF 7-2, Holsworth Affidavit; ECF 9-1, Olhausen Declaration.  The Court may not resolve factual disputes contained in the parties' competing affidavits.  *Anderson*, 477 U.S. at 249.

Notably, plaintiff avers generally that "there is no evidence of any payments" made by defendant, but plaintiff is largely silent as to the allegations defendant raises about the Note's formation.  *See generally* ECF 35, 35-1, Reply.  And, OBM has not had an opportunity to

discover evidence to support its contentions.  *See McCray*, 741 F.3d at 484.  Factual matters about the Note's origin are material to the case because they are central to determining whether defendant has met its obligations under the Note and whether the Note itself is enforceable.

Therefore, I am satisfied that plaintiff's pre-discovery Motion for Summary Judgment is premature.

## IV.  Conclusion

For the foregoing reasons, I shall DENY plaintiff's Motion for Summary Judgment, without prejudice to the right of plaintiff to renew the Motion after discovery.  And, I shall DENY, as moot, defendant's Motion to Defer.

A separate Order follows, consistent with this Memorandum.


Date:  December 29, 2015                                    _____/s/_____
                                                                           Ellen L. Hollander
                                                                           United States District Judge