IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

K & S REAL PROPERTIES, INC.
*Plaintiff and Counter-Defendant*,

v.

OLHAUSEN BILLIARD MANUFACTURING, INC.
*Defendant and Counter-Plaintiff*.

Civil Action No. ELH-15-1199

**MEMORANDUM**

K & S Real Properties, Inc. ("K & S"), plaintiff, filed suit against Olhausen Billiard Manufacturing, Inc. ("OBM"), alleging breach of contract. OBM filed counterclaims against K & S and its lawyers, Timothy Guy Smith, P.C., trading as The Law Offices of Timothy Guy Smith ("Smith, P.C."), and Timothy Guy Smith ("Smith") (collectively, the "Smith Defendants"), alleging, *inter alia*, fraud and legal malpractice.

OBM has moved to disqualify the Smith Defendants as counsel for K & S (ECF 43), supported by a legal memorandum (ECF 44) (collectively, "Motion" or "Motion to Disqualify") and several exhibits, including a Declaration from Donald Olhausen, the President of OBM. ECF 44-1 at 1–6. According to OBM, Smith is the only lawyer at Smith, P.C.; Smith is the sole owner of K & S; Smith has a conflict of interest in representing K & S against OBM, because OBM is a former client of the Smith Defendants; and Smith is a necessary witness in this suit. ECF 43, ¶ 4; ECF 44 at 3. K & S opposes the Motion (ECF 45, "Opposition"). In support of its position, K & S has submitted exhibits that include documents related to the underlying transaction; an affidavit by Robert L. Harris, President of KH Funding Company (ECF 45-1 at

4–5);[1] and Smith's Affidavit. ECF 45-1 at 10–11. OBM has replied (ECF 46, "Reply") and submitted two additional exhibits: the Declaration of Nancy Correa (ECF 46-1), an attorney at Watkins Firm, APC, a law firm that has represented OBM "in many matters over many years" (*id.* at 1), and the Declaration of Alan F. M. Garten, Esq., counsel for OBM in this case. ECF 46-2, "Garten Declaration."

The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons stated below, I shall grant the Motion to Disqualify.

## I. Factual Background[2]

In a Complaint filed April 27, 2015 (ECF 1), K & S sued OBM, alleging that in October 2008, OBM entered into a Non-Recourse Revolving Line of Credit with K & S (ECF 1-1, the "Note") and, since January 28, 2009, OBM failed to make any payment on the Note (ECF 1, ¶ 4), which came due on October 31, 2013. *Id.* ¶ 5. Plaintiff seeks $600,000 in unpaid principal, interest in excess of $400,000, and attorney's fees. ECF 1 at 2.[3] K & S is represented by the Smith Defendants.

In its Motion, OBM alleges that, "during all relevant times in this lawsuit," Smith served as OBM's legal counsel (ECF 43 at 2), including the period when the Note was executed. *Id*.[4] According to OBM, Smith advised OBM to execute the Note (*id.*), which was part of a "convoluted, interconnected multi-transactional effort by the Timothy Smith Defendants and

[1] KH Funding Company's role in this case is discussed *infra*.

[2] For purposes of this Memorandum, it is unnecessary to review fully the procedural history and allegations.

[3] Jurisdiction is founded on diversity of citizenship. *See* 28 U.S.C. § 1332.

[4] OBM asserted the same allegations in earlier submissions. *See, e.g.*, ECF 19, Amended Answer.

K & S which resulted in the misappropriation (or a significant loss in value of) retirement funds from OBM's president . . . ." ECF 44 at 2.

OBM explains that it "needed an infusion of funds in 2008 due to the recession, and OBM's president, Donald Olhausen . . . determined to get the funds from his personal IRA and pay any resulting taxes and penalties." ECF 44 at 2. However, Smith, who was then "representing OBM on diverse legal issues" (*id.*), allegedly "advised" Olhausen "not to cash out his IRA, but to use Attorney Smith's scheme to borrow the IRA funds without incurring taxes and penalties." *Id.* In particular, OBM claims that Smith "instructed Olhausen to transfer his IRA to KH Funding Company (KHFC), a financial firm with which Attorney Smith was associated, then KHFC would 'loan' the funds to plaintiff K & S, which would 'loan' the funds back to OBM." *Id.* at 3. OBM attached to the Motion a memorandum dated October 30, 2008, signed by Mr. Olhausen, which authorized KHFC to transfer funds from Mr. Olhausen's IRA to "Timothy G. Smith and Douglas K. Kelly." ECF 44-1 at 16.

OBM has submitted Olhausen's Declaration stating that Smith served as counsel for OBM at the relevant time. ECF 44-1, ¶ 3. Olhausen avers in his Declaration that Smith insisted "OBM would not be required to repay the money until it was in a position able to replenish [the] IRA account with KHFC." *Id.* ¶ 5. According to Olhausen, Smith claimed that "KHFC would 'loan' the funds to a third party, which would 'loan' the funds back to OBM. . . . [I]n this way OBM could access virtually all of [Olhausen's] IRA funds without taxes and penalties for early withdrawal." *Id.* Smith advised that the purpose of "OBM's promissory note" was "only . . . to satisfy IRS guidelines." *Id.*

According to OBM, these events make Smith a necessary witness in this case and create a conflict of interest. ECF 44 at 9–11. In particular, OBM states that, "based on the defenses and

claims raised by OBM, Attorney Smith's alleged improper actions are central to OBM's claim that OBM does not owe any money on the subject promissory note and OBM's related claim that Attorney Smith misappropriated Mr. Olhausen's IRA funds for Attorney Smith's own benefit." *Id.* at 11. Further, OBM avers that it "never consented to Attorney Smith serving as counsel for K & S." ECF 44 at 10.

Along with its Motion to Disqualify, OBM submitted a transcript of a deposition of Smith, conducted in connection with litigation in a Tennessee state court involving Smith's wife and Olhausen. ECF 44-1 at 40–45, "Transcript." OBM contends that the Transcript establishes that Smith "admitted that he 'probably did' provide legal advice to OBM regarding the IRA transactions that are central to the instant lawsuit." ECF 44 at 3.

The following deposition exchange is relevant, ECF 44-1 at 42:

> [OBM's Counsel]: All right. Did you give Mr. Donny Olhausen any advice about how to structure this deal with his IRA or 401K money, whichever it was, that was about $768,000?
>
> [Smith]: I probably did, but that's about as far as we're going with that line of inquiry, because . . . .
>
> [OBM's Counsel]: What did you – what advice did you give him?
>
> [Smith]: We're not going any further with that inquiry . . . .

Thereafter, Smith refused to answer the question, because of the pendency of the case in Maryland, claiming: "It's not relevant . . . ." *Id.*

In its Opposition (ECF 45), K & S states, *id.* at 6 (alterations added):

> [T]he undersigned [Smith] was questioned as to whether or not the matter of Mr. Olhausen moving his IRA to KH Funding had ever been discussed and the responsive [sic] was unequivocally "probably." However, . . . the undersigned had no involvement in the transfer, the preparation of transfer documents or the preparation of indebtedness documents involved in this transaction. Those documents were all prepared by either KH Funding or Mark Kugler, Esquire and no changes, modifications or edits were requested by [Smith].

In his Affidavit (ECF 45-1 at 10–11), Smith does not directly address whether he served as OBM's counsel at the relevant time. But, he asserts that he "took no part in the preparation of documents" for Olhausen's IRA transfer and "took no part in the negotiation of interest rates or terms of loans" between KHFC, OBM, and K & S. *Id.* ¶¶ 3, 4.

K & S also contends that it would suffer hardship if the Smith Defendants are disqualified, because it "has no financial ability to retain and/or pay attorneys for the collection of a non-ambiguous Promissory Note . . . ." ECF 45 at 5. Further, it alleges that OBM has made it "very clear" that its intention in regard to the Motion is to create "protracted and prolonged litigation," which would "place a severe financial burden" on Smith. *Id.*

In Reply, OBM argues that the Opposition shows K & S "cannot refute" that it is improper for Smith to represent K & S because of a conflict of interest (ECF 46 at 2) and because Smith is a necessary witness. *Id.* at 3. According to OBM, "[s]imply because Attorney Smith purportedly did not draft the documents related to the subject transaction does not alter the fact that he served as OBM's counsel for the [Note] transaction.[]" ECF 46 at 2, Reply (alteration added).

OBM also avers that K & S has "omitted key facts" regarding the transaction underlying this case, including "that the loan went to Attorney Smith (who is the sole owner of K & S) and Douglas Kelly individually as borrowers with K & S as guarantor . . . ." *Id.* at 4. Further, OBM contends that K & S has misrepresented the "compelling, legitimate reasons" OBM seeks to disqualify the Smith Defendants. ECF 46 at 7; *see also* ECF 46-2 at 1, Garten Declaration (denying that he threatened to increase litigation expenses for the purpose of burdening Smith).

Additional facts are included in the Discussion.

**II. The Maryland Rules of Professional Conduct**

Pursuant to Local Rule 704, this "Court shall apply the Rules of Professional Conduct as they have been adopted by the Maryland Court of Appeals." Two of the Maryland Rules of Professional Conduct ("MRPC") are pertinent here: MRPC 1.9 and MRPC 3.7.

MRPC 1.9 governs an attorney's obligations to a former client. It provides, in relevant part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing. . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.
>
> The Comments section for MRPC 1.9 provides:
>
> [1]. . . . Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients in that matter, unless all affected clients give informed consent . . . .
>
> [3] Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter . . . .

The Maryland Court of Appeals has advised that a determination of whether matters under MRPC 1.9 are "'substantially related' [includes] consideration of circumstances where the same issue is litigated, albeit for a different client, if there is a substantial risk that confidential

communications between the attorney and his or her former client may be disclosed or utilized in a material manner prejudicial to the former client." *Attorney Grievance Comm'n of Md. v. Siskind*, 401 Md. 41, 57, 930 A.2d 328, 337 (2007) (citations omitted) (alteration added).

In relevant part, MRPC 3.7 provides: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . (3) disqualification of the lawyer would work substantial hardship on the client." MRPC 3.7(a)(3).

## III. Discussion

"The drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel; and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992) (*citing Woods v. Covington Cnty. Bank,* 537 F.2d 804, 813 (5th Cir. 1976)); *see also Richmon Hilton Assoc. v. City of Richmond,* 690 F.2d 1086, 1089 (4th Cir. 1982). On the other hand, "the Court must be mindful of its obligation to the public and to upholding integrity in the judicial system." *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 303–304 (D. Md. 1995).

In *Zachair v. Driggs*, 965 F. Supp. 741 (D. Md. 1997), Judge Andre Davis, then a district judge, explained, *id.* at 749–50:

> Federal courts have inherent authority to discipline attorneys who appear before them for conduct deemed inconsistent with ethical standards imposed by the court." *MMR/Wallace Power & Indus. v. Thames Associates*, 764 F. Supp. 712, 717 (D. Conn. 1991); *see Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990) ("The Court is charged with the duty and responsibility of supervising the conduct of attorneys who appear before it."); *see also Plant Genetic Systems, NV v. Ciba Seeds,* 933 F. Supp. 514, 517 (M.D.N.C. 1996) ("A motion to disqualify an attorney is addressed to the discretion of the district court . . . . "). . . .
>
> A motion to disqualify counsel is a "serious matter," *Plant Genetic Systems,* 933 F. Supp. at 517, which must be decided on a case-by-case basis. *See*

> *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 304 (D. Md. 1995). This is so because two significant interests are implicated by a disqualification motion: "the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." *Tessier*, 731 F. Supp. at 729; *Buckley*, 908 F. Supp. at 304. Nevertheless, "the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings." *Plant Genetic Systems*, 933 F. Supp. at 517; *see Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir. 1975) (finding that a party's free choice of counsel must yield to "considerations of ethics which run to the very integrity of our judicial process."). Thus, this Court must not weigh the competing issues "with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (internal quotation marks and citations omitted); *Rogers v. Pittston Co.*, 800 F. Supp. 350, 353 (W.D. Va. 1992); *Buckley*, 908 F. Supp. at 304.

**A. MRPC 1.9**

In applying MRPC 1.9 to a motion to disqualify, courts in this district have used a two-part standard. For example, in *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 723 (D. Md. 2004), Judge Titus stated: "In evaluating a disqualification motion, a court must first determine whether an attorney-client relationship existed between the challenged law firm and the objecting client, and then resolve whether the matter at issue in the challenged representation is the same or substantially related to the matter involved in the prior representation." *See also Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 610 (D. Md. 2002) (applying this two-part standard pursuant to an earlier version of MRPC 1.9).

OBM claims that Smith served as its counsel from 2007 to January 2015, which includes the period when the Note was executed. *See, e.g.*, ECF 9 at 2; ECF 19 at 12; ECF 44 at 2; ECF 44-1, ¶ 3. And, OBM attributes to Smith the idea for the transaction that culminated in this suit. Moreover, OBM posits that Smith "allegedly misappropriated OBM's funds while serving" as its counsel. ECF 44 at 2. Therefore, OBM insists that Smith must be disqualified as counsel for

K & S, because he represented OBM in the transaction at issue (ECF 44 at 9–10) and "K & S's interests are materially adverse to OBM." *Id.* at 10.

In his submissions, Smith has never disputed his role in crafting the idea for the loan transaction. Nor has he discussed his relationship with OBM in any depth. *See generally* ECF 1; ECF 7; ECF 45; ECF 45-1. Rather, as noted, he merely refutes his personal involvement with "preparation of documents" and "negotiation of interest rates or terms" of the loans underlying the Note. ECF 45-1 at 10-11, Smith Affidavit.

K & S posits that the Note is "non-ambiguous" (ECF 45 at 3, Opposition), "uncontested," and "irrefutable." *Id.* at 5. K & S also argues that Smith's role as plaintiff's counsel does not present a conflict of interest because Smith "had no involvement in the transfer" under the Note and he did not personally prepare documents for the transaction. *Id.* at 6. K & S relies largely on facts surrounding the alleged validity of the Note as well as the financial burden K & S will experience if the Smith Defendants are disqualified as its counsel. *See* ECF 45 at 4–5.

OBM has submitted a letter dated January 28, 2015, sent to Olhausen from the law firm Anderson & Quinn, LLC, which appears to be related to an action by Smith and his wife to collect "certain monies loaned" to Olhausen under promissory notes. *See* ECF 44-1 at 36. The letter from Smith's counsel stated, ECF 44-1 at 37 (emphasis added):

> Timothy and Lisa Smith have retained my firm to arrange for the repayment of certain monies loaned to you in the past . . . .
>
> [I]n order to secure a loan that you took from your retirement plan, the Smiths allowed an encumbrance to be placed against property that they own. Said funds were then loaned to you and creating a further obligation from you to the Smith's [sic] company K&S Real Properties. We propose that you instruct your retirement trustee to release said encumbrance and allow K&S to assign the indebtedness to your retirement trustee with an associated release of liability granted to K&S. . . .

> *. . . The reason that I am writing to you on behalf of the Smiths is that Mr. Smith is a practicing licensed attorney and given his past associations with you, he is not allowed to discuss these matters directly with you.*

This letter plainly indicates that Smith previously represented OBM. It is also consistent with Olhausen's Declaration. ECF 44-1, ¶ 3. And, as indicated, Smith does not deny that he previously represented OBM. *See* ECF 45-1 at 10–11. As noted, "this Court must not weigh the competing issues 'with hair-splitting nicety but, in the proper exercise of its supervisory power . . . is to resolve all doubts in favor of disqualification.'" *Zachair*, 965 F. Supp. at 750 (citations omitted). Accordingly, I am satisfied that Smith previously represented OBM, and that an attorney-client privilege existed between the Smith Defendants and OBM. *See Gross*, 307 F. Supp. 2d at 723.

The Court must also consider "whether the matter at issue in the challenged representation is the same or substantially related to the matter involved in the prior representation." *Gross*, 307 F. Supp. 2d at 723. This analysis is assisted by the text of MRPC 1.9. Again, the rule provides, in relevant part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

The matter at issue here concerns the Note that OBM executed in October 2008, along with the underlying transaction. *See generally* ECF 1. Although Smith contends that he "had no involvement in the transfer, the preparation of transfer documents or the preparation of indebtedness documents involved in [the Note] transaction" (ECF 45 at 6) (alteration added), OBM maintains that Smith had significant involvement in the events that led to the execution of the Note. These allegations are supported, *inter alia*, by Smith's deposition transcript in another matter and other documents. *See generally* ECF 44-1.

For example, the four checks that OMB received from KHFC as part of the transaction were signed by Smith. *See* ECF 44-1 at 18–21; ECF 9-1 at 18–21 (providing the same with improved legibility). Also, OBM has submitted email correspondence between Olhausen and Smith related to events following the execution of Note. ECF 44-1 at 30–34; ECF 9-1 at 30–34 (providing the same). One of these emails, dated December 27, 2010, includes a response from Smith to Olhausen, who had written to Smith inquiring about KHFC's filing for bankruptcy. ECF 44-1 at 32. Smith wrote: "[Y]ou can ignore since K & S owes you alot [sic] of money and OBM owes K & S alot [sic] of money . . . ." *Id.* In another email, dated February 23, 2012, Smith wrote the following to Olhausen regarding KHFC's financial status, ECF 44-1 at 34: "[Y]ou have less than 70K in [KHFC] with most of the funds loaned back to OBM through K & S. That balance is probably over a million by now."

Additionally, the letter from Anderson & Quinn to Olhausen suggests that Smith has pursued legal action against Olhausen related to the underlying transaction. ECF 44-1 at 36. As noted, by letter dated January 28, 2015, counsel for Smith stated, ECF 44-1 at 36: "Timothy and Lisa Smith have retained my firm to arrange for the repayment of certain monies loaned to you in the past . . . . [I]n order to secure a loan that you took from your retirement plan, the Smiths allowed an encumbrance to be placed against property that they own. . . ."

As stated, Smith maintains that disqualification is not warranted because he had "no involvement" in the transfer of funds underlying the Note. ECF 45 at 6. Nevertheless, Smith had an attorney-client relationship with OBM at the time the Note was executed. And, according to the allegations in the counterclaim, the Note is the product of Smith's representation of OBM.

Smith, a lawyer who formerly represented OBM regarding the contested Note, is now representing K & S in a suit against OBM to enforce that Note. Smith has represented the

adversaries in this case, not just on the same *matter*, but regarding the *same document.* And, given that K & S has sued OBM to recover up to $1 million in contested funds (ECF 1, ¶ 8), K & S's interests are materially adverse to the interests of OBM. *See* MRPC 1.9; *see also Clarkson*, 567 F.2d at 273 n.3 (noting that courts must "resolve all doubts in favor of disqualification").

Clearly, "the challenged representation is the same or substantially related to the matter involved in the prior representation." *Gross*, 307 F. Supp. 2d at 723. Based on the foregoing, Rule 1.9 requires the disqualification of the Smith Defendants.

Even if Rule 1.9 did not compel disqualification, Rule 3.7 would require disqualification; it would not protect the Smith Defendants under the facts of this case. I turn to discuss Rule 3.7.

**B. MRPC 3.7**

MRPC 3.7 governs instances in which lawyers may serve as witnesses. In relevant part, MRPC 3.7 provides: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . (3) disqualification of the lawyer would work substantial hardship on the client." MRPC 3.7(a)(3).

OBM posits that Smith should be disqualified as counsel for K & S pursuant to MRPC 3.7, because Smith is a necessary witness in the case. *See* ECF 44 at 10–13. According to OBM, *id.* at 11 (alteration added):

> [It] raised various defenses, and brought counterclaims against Attorney Smith and his law firm, based on the allegation that Attorney Smith fraudulently (or, at a minimum, negligently) designed and implemented the above scheme without fully disclosing its components to OBM. Simply put, based on the defenses and claims raised by OBM, Attorney Smith's alleged improper actions are central to OBM's claim that OBM does not owe any money on the subject promissory note and OBM's related claim that Attorney Smith misappropriated Mr. Olhausen's IRA funds for Attorney Smith's own benefit. Therefore, Attorney Smith is a necessary witness in this case.

Moreover, OBM states: "Any suggestion that the substantial hardship exception applies here based on negative financial repercussions to K & S . . . should be disregarded [because] any purported financial impact would be minimal (at best) and Attorney Smith's actions and the rules of fairness should preclude consideration of any such argument."[5] ECF 44 at 11 (alterations added).

K & S argues that it is subject to the exception under MRPC 3.7(a)(3) that permits an attorney to serve as a witness if "disqualification of the lawyer would work substantial hardship on the client." K & S also contends that MRPC 1.9 is "tempered by Rule 3.7" (ECF 45 at 6), and asserts that K & S has "no financial ability to retain and/or pay attorneys" because it is "for all intense [sic] and purposes, a zero net entity . . . ." ECF 45 at 5, Reply. To support this claim, K & S offers the following: "Should the Court request, K&S Real Properties would be more than happy to produce either an Affidavit of its accountant or its financial statements verifying that its rental income roughly approximates its mortgage, tax and insurance payments on a monthly basis." *Id.* n.1.

In Reply, OBM contends that K & S has "solely relied on bald assertions" to claim it will suffer substantial hardship, and that K & S's argument is flawed because it fails to take into account Smith's personal finances. ECF 46 at 5–6. OBM also reiterates that, regardless of K & S's ability to pay for counsel, the "rules of fairness" compel Smith's disqualification. *Id.* at 6.

Given Smith's integral role at K & S and KHFC, and his alleged involvement with OBM in regard to the underlying dispute, it seems quite likely that he will be called as a witness. In

[5] OBM suggests that David G. Mulquin, Esq., counsel for the Smith Defendants, offers "the most logical solution" for alternative counsel because "K & S's legal fees will likely be minimized since Mr. Mulquin would not need to duplicate efforts for each of his clients." ECF 44 at 11.

my view, K & S has not advanced a persuasive argument for application of the exception in MRPC 3.7. Indeed, K & S has not offered any support for the assertion that Smith's disqualification would "work substantial hardship" on plaintiff. *See generally* ECF 45, Reply.

Moreover, even if adequate support existed to show substantial hardship would result, and even if Smith were unlikely to serve as a witness, the risk of impropriety under MRPC 1.9, discussed above, outweighs any possible hardship to plaintiff. *See supra* Part III-A.

## IV. Conclusion

I conclude that the Motion to Disqualify is meritorious in order to protect "the integrity of the court proceedings." *Plant Genetic Systems*, 933 F. Supp. at 517; *see also Buckley*, 908 F. Supp. at 303–304; *Siskind*, 401 Md. at 57, 930 A.2d at 337. In particular, Smith's continued representation of K & S in this suit against OBM would directly violate the Maryland Rules of Professional Conduct. Therefore, I shall grant defendant's Motion to Disqualify. ECF 43.

A separate Order follows, consistent with this Memorandum.

Date: March 10, 2016

/s/
Ellen L. Hollander
United States District Judge