IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

K & S REAL PROPERTIES, INC.
 *Plaintiff and Counter-Defendant*,

 v.

OLHAUSEN BILLIARD
MANUFACTURING, INC.
 *Defendant and Counter-Plaintiff.*

Civil Action No. ELH-15-1199

**MEMORANDUM**

K & S Real Properties, Inc. ("K & S"), plaintiff, filed suit against Olhausen Billiard

Manufacturing, Inc. ("OBM"), alleging breach of contract with respect to a promissory note.

ECF 1.[1]  OBM filed counterclaims against K & S; Timothy Guy Smith, P.C., trading as The Law

Offices of Timothy Guy Smith ("Smith, P.C."); and Timothy Guy Smith ("Smith") (collectively,

the "Smith Parties").  ECF 19, Amended Answer.  OBM alleges claims of fraud; fraud in the

inducement; legal malpractice (against Smith Parties); and breach of fiduciary duties (against

Smith Parties).  *Id.* at 15–21.  OBM also seeks declaratory relief.  *Id.* at 21–22.  Three motions

are now pending.[2]

The Smith Parties filed a motion to dismiss OBM's counterclaims (ECF 37),[3] along with

a supporting memorandum (ECF 37-1) (collectively, "Motion to Dismiss").  They maintain that

OBM lacks subject matter jurisdiction as to them, based on diversity, because OBM "has failed

---

[1] Jurisdiction is based on diversity.  *See* 28 U.S.C. § 1332.

[2] The Court has already ruled on other motions in this case.  *See* ECF 47; ECF 48
(denying K & S's motion for summary judgment, at ECF 7); ECF 65; ECF 66 (granting motion
to disqualify the Smith Parties as counsel for K & S, at ECF 43).

[3] Pursuant to Fed. R. Civ. P. 13(h), "a person" may be added "as a party" to a
counterclaim, in accordance with the joinder rules in Fed. R. Civ. P. 19 and 20.

to sufficiently plead damages exceeding $75,000 . . . ."   ECF 37 at 2; *see also* ECF 37-1 at 3–4. In addition, they argue that dismissal is appropriate because they are not subject to joinder under Rule 19 or Rule 20 of the Federal Rules of Civil Procedure.   *Id.* at 2–3.   OBM opposes the Motion to Dismiss. ECF 40, "Opposition-Motion to Dismiss." No reply has been filed.

Pursuant to Fed. R. Civ. P. 20, K & S filed a "Motion To Join" Donald Olhausen, OBM's President, as a defendant/counter-plaintiff (ECF 49), supported by a memorandum (ECF 49-1) (collectively, "Motion to Join").   OBM opposes the Motion to Join (ECF 51, "Opposition-Motion to Join") and has submitted three exhibits.   These include a Declaration by Donald Olhausen (ECF 51-1) ("Olhausen Declaration"), identical to declarations previously submitted by Olhausen (ECF 9-1; ECF 44-1) in opposition to K & S's earlier motion for summary judgment (ECF 7), and in support of OBM's prior Motion to Disqualify K & S's counsel (ECF 43).   In addition, K & S submitted a complaint from a related lawsuit in Tennessee between Olhausen and Smith (ECF 51-2), and another Declaration of Olhausen.   ECF 53, "Second Olhausen Declaration."[4]   K & S filed a Reply (ECF 54) and, with leave of court (ECF 62), OBM filed a surreply (ECF 60-2), supported by a memorandum (ECF 61) (collectively, "Surreply").

Thereafter, K & S filed its "Motion To Strike And/Or Request for Reconsideration." ECF 63, "Motion to Strike."   According to K & S, there is no basis for the filing of a surreply. OBM opposes the Motion to Strike.   ECF 64, "Opposition-Motion to Strike."   No reply has been filed.

---

[4] Initially, K & S submitted an unsigned version of the Declaration. *See* ECF 51-3. As to ECF 51-3, OBM's counsel explained:   "This Declaration has been approved by Mr. Olhausen; however, he has not had the opportunity to sign it yet (he is experiencing inclement weather which prevents him from going somewhere to execute/return the Declaration).   Undersigned counsel will supplement this Opposition with the signed Declaration upon receipt of same." ECF 51 at 10 n.9.   ECF 53 is the signed version of the Declaration.

The motions have been fully briefed, and no hearing is necessary to resolve them.  *See* Local Rule 105.6.  For the reasons stated below, I shall deny the Motion to Dismiss in part and grant it in part; deny the Motion to Join; and deny the Motion to Strike.

## I.  Factual and Procedural Background[5]

In a Complaint filed April 27, 2015 (ECF 1), K & S sued OBM for breach of contract. K & S alleged that in October 2008, OBM entered into a Non-Recourse Revolving Line of Credit with K & S (ECF 1-1, the "Note") and that, since January 28, 2009, OBM failed to make any payments due on the Note.  ECF 1, ¶ 4.  The Note, which is dated October 3, 2008 (ECF 1-1 at 1), came due on October 31, 2013.  ECF 1, ¶ 5.  K & S seeks $600,000 in unpaid principal, interest in excess of $400,000, and attorney's fees.  ECF 1 at 2.

The Note identifies OBM as the "Borrower" and K & S as the "Lender[.]" ECF 1-1 at 1. It was signed by Mr. Olhausen for OBM (ECF 1-1 at 3), and witnessed by David Robinson, OBM's chief financial officer. ECF 7-1 (memorandum supporting K & S's summary judgment motion), ¶ 3.  The Note states, ECF 1-1 at 1: "For value received, the undersigned, [OBM] . . . promise [sic] to pay to the order of [K & S] . . . the principal sum of Seven Hundred Fifty Thousand and  no/100ths Dollars ($750,000.00), as advanced and re-advanced, with interest at the rate of Eight  [per cent] (8.00%) per annum until paid. Prior to maturity, the Borrower(s) shall have the right to borrow. . . ."  Further, the Note provides, *id.*:

> Interest shall be payable monthly on the outstanding principal balance commencing on the 3rd day of November, 2008 and continuing on the 3rd day of each month until the 3rd day of October, 2013, when all principal and unpaid interest is due in full, provided however, Lender shall have the right to demand full payment of all outstanding principal and unpaid interest on each anniversary date of the Note upon thirty (30) days advance written notice to Borrower(s).

---

[5] For purposes of this Memorandum, it is unnecessary to review fully the procedural history and factual allegations.  However, to the extent relevant, I incorporate by reference the factual background set forth in ECF 47 and ECF 65.

On July 16, 2015, OBM filed an Amended Answer to the Complaint and Amended Counterclaims. ECF 19, Amended Answer.[6]   The Amended Answer includes 15 affirmative defenses.  ECF 19 at 3–10.  According to OBM, at the time the Note was executed, the Smith Parties served as OBM's "legal counsel . . . [and] . . . acted as such from 2007 to January 2015 . . . advis[ing] OBM on a variety of legal and business matters."  ECF 19 at 12.

In addition, ECF 19 contains five causes of action against K & S and the Smith Parties. As noted, the counterclaims allege the following: fraud, against all three counterdefendants; fraud in the inducement, against all three counterdefendants; legal malpractice, against the Smith Parties; breach of fiduciary duties, against the Smith Parties; and declaratory relief, as to all counterdefendants.  ECF 19 at 15–22.  With respect to the demand for declaratory relief, OBM seeks numerous "[j]udicial declarations" (*id.* at 22), to the effect that "the Note is void, voidable, or unenforceable . . . ."  *Id.* at 21.

The parties agree that OBM obtained $600,000.  ECF 1, ¶ 4; ECF 19, Amended Answer, at 3; ECF 9, OBM's Opposition to K & S's summary judgment motion, at 4; ECF 51-1, Olhausen Declaration, ¶ 10.[7]   However, the parties disagree about the source of the funds, the genesis of the Note, its validity, and K & S's right to recover on the Note.

---

[6] OBM's original Answer was filed on July 10, 2015.  ECF 8.  The Amended Answer corrected the name of the law office to Timothy Guy Smith, P.C. Trading as the Law Offices of Timothy Guy Smith. ECF 19-1, Redlined Version, at 1.

[7] OBM states that it received $600,000.  ECF 40 at 4, n.1.  But, the record is not entirely clear as to the precise amount that was borrowed.  *See, e.g.*, ECF 9 (OBM's opposition to K & S's summary judgment motion), at 4 ("OBM did in fact receive $600,000 over four installments. . . ."); ECF 19, Amended Answer, at 14 (discussing four checks totaling $650,000); ECF 1, ¶ 4 (listing three checks totaling $600,000); ECF 51-1, Olhausen Declaration, at 18–21 (providing copies of four checks that appear to total $600,000, although the amounts are difficult to decipher).

K & S asserts that OBM received "drafts . . . as follows: October 10, 2008 - $150,000.00; October 27, 2008 - $250,000.00; January 28, 2009 - $200,000.00." ECF 1, ¶ 4.  K & S alleges that the "failure of the Defendant to make payments as agreed upon in [the] Note amounts to a material default and is otherwise a breach of the contract between the parties." ECF 1, ¶ 7.

According to OBM, K & S provided OBM with "four checks totaling $600,000 from October 2008 to February 2009." ECF 51-1, Olhausen Declaration, ¶ 10; *see also* ECF 51-1 at 18–25 (including account statements and copies of the four checks OBM received, the last of which is undated, and all of which are signed by Smith); ECF 35-7 (appended to K & S's reply in support of its summary judgment motion, ECF 7). However, according to OBM, the "funds purportedly loaned to defendant . . . did not belong to plaintiff." ECF 19, Amended Answer, at 2.

OBM explains that it "needed an infusion of funds in 2008 due to the recession, and Mr. Olhausen determined to borrow the funds from his personal IRA and pay any resulting taxes and penalties." ECF 51 at 2; ECF 19 at 13.  However, Smith, who was then "representing OBM on diverse legal issues" (ECF 51 at 2), and also a principal of K & S (ECF 19 at 3), allegedly "advised" Olhausen "not to cash out his IRA, but to use Attorney Smith's scheme to borrow the IRA funds without incurring taxes and penalties." *Id.* In particular, OBM claims that Smith "instructed Mr. Olhausen to transfer his IRA to KH Funding Company ('KHFC'), a financial firm with which Attorney Smith was associated, then KHFC would 'loan' the funds to Plaintiff K & S, which would 'loan' the funds back to OBM." *Id.* at 3.

According to OBM, it relied on Smith's advice.  As a result, Olhausen "transferred [his] IRA from SunTrust Bank to KHFC in September 2008." ECF 51-1, Olhausen Declaration, ¶ 6.

At the time, the IRA held "at least $789,725.40."[8]  ECF 19 at 13.  Also in September 2008, and allegedly at the direction of Smith, Olhausen signed two memoranda authorizing KHFC to transfer funds from his IRA account to K & S (ECF 51-1, Olhausen Declaration, ¶ 8; *see also* ECF 51-1 at 14), and to "Timothy G. Smith and Douglas K. Kelly."  ECF 51-1, Olhausen Declaration, ¶ 9; *see also* ECF 51-1 at 16.  It appears that both memoranda are related to the same transaction. *See* ECF 51-1, Olhausen Declaration, at 14-16.

The events following the transfer of IRA funds from KHFC are not clear. *See* ECF 51-1, Olhausen Declaration, ¶ 7; ECF 51-1 at 8 (Olhausen's IRA transfer request); ECF 14-1, Declaration of Melissa H. Lum, Esq., counsel for OBM ("Lum Declaration"), at 8. According to OBM, Olhausen had about $825,000 in his IRA at SunTrust Bank in September 2008.  ECF 40, Opposition-Motion to Dismiss, at 4; *see also* ECF 51-1, ¶ 6.  But, KHFC reported receipt of $789,000. *Id.*  OBM states:  "It is unknown why there was a $36,000 shortfall."  ECF 40 at 4. And, on October 3, 2008, "KHFC transferred up to $750,000 of [the total IRA] sum to Attorney Timothy G. Smith himself and Douglas K. Kelly, the principals of plaintiff K & S Real Properties, Inc."  ECF 19, Amended Answer, at 3; *see also* ECF 14-1, Lum Declaration, at 8.  In particular, an "[u]ndisclosed amount" was conveyed pursuant to a line of credit of $750,000, reflected in a promissory note "guaranteed" by K & S and "secured by [an] Indemnity Deed of Trust dated 10/3/2008." ECF 14-1, Lum Declaration, at 8; *see also* ECF 9-2, Declaration of Nancy Correa, Esquire, counsel for OBM (including the Indemnity Deed of Trust), at 20–45. Thereafter, K & S transferred $600,000 to OBM.  *See* note 7, *supra*; *see also* ECF 14-1, Lum Declaration, at 8; ECF 1, ¶ 4.

---

[8]   It appears that the sum of $789,725.40 was transferred to KHFC.  ECF 14-1, Declaration of Melissa Lum, Esquire, at 8.  But, Olhausen claims that his IRA balance was $828,297 before the transfer occurred on September 11, 2008. *Id.*; *see also* ECF 19 at 13.

OBM maintains that Olhausen's IRA held about $828,000, and is now "reduced to about $70,000, with only $600,000 being transferred to OBM as planned."   ECF 14-1, Lum Declaration, ¶ 7.  Lum avers:  "Smith has never accounted for approximate $158,000 shortfall." *Id.*  [the]

K & S has submitted what appears to be a record of payments made to OBM, but the documentation is difficult to decipher and does not address the alleged shortfall in funds. *See* ECF 7-4 (copies of account statements submitted by K & S).   According to OBM, the four checks that it received are "drawn on the joint account of 'KH Funding Company Reserve Account and K. & S. Real Properties, Inc.[3]'" ECF 51-1, Olhausen Declaration, ¶ 10; ECF 51-1 at 18–21 (copies of the checks that align with this description).  "All checks were signed by Attorney Smith, and the account holder address on the checks matches Attorney Smith's current address."  *Id.* Additionally, a KHFC account statement submitted by OBM shows a payment of $13,927.50 to "Kugler."  ECF 51-1, Olhausen Declaration, at 25.  Olhausen asserts he does "not know who Kugler is or why he received that sum from [Olhausen's] IRA." *Id.* ¶ 11.

K & S maintains that OBM "is attempting to blend several matters into a singular event" and nothing "alter[s] the fact that $600,000.00 was loaned" by K & S to OBM.  ECF 35-1 (reply memorandum in support of summary judgment motion), at 2.  K & S contends: "Any and all . . . issues related to Donald Olhausen's IRA related to Donald Olhausen personally, related to conflicts of interest, have no bearing upon the primary issue in this case, namely the loaning of funds and the lack of repayment thereon." *Id.*

## II. Discussion

### A. The Smith Parties' Motion to Dismiss

The Smith Parties have moved to dismiss OBM's counterclaims.  ECF 37.[9]  They argue

that OBM "has failed to . . . demonstrate proper subject matter jurisdiction."  ECF 37-1 at 3–4.

Further, the Smith Parties contend that the counterclaims do not meet the requirements for

joinder under Fed. R. Civ. P. 19 or 20.  ECF 37-1 at 4.

OBM insists that joinder of the Smith Parties is appropriate, because they are "necessary

parties."  ECF 40 at 2.  In this regard, OBM observes that the counterclaims involve the "same

series of transactions" as the Complaint.  *Id.* at 11.  OBM also cites 28 U.S.C. § 1367(b) and

states: "This Court has supplemental jurisdiction over the parties because the counterclaims arise

out of the same transaction or occurrence."  ECF 19 at 12.

### 1. Joinder

I turn first to the Smith Parties' joinder challenge.[10]

As noted, OBM has lodged five causes of action against the Smith Parties: fraud; fraud in

the inducement;[11] legal malpractice; breach of fiduciary duty;[12] and declaratory relief.  ECF 19,

---

[9] The Smith Parties do not identify any standard by which the court should assess the motion to dismiss.  *See generally* ECF 37.

[10] The Smith Parties' challenge to counterclaim jurisdiction is discussed, *infra*.  Although jurisdiction is a threshold question, the jurisdictional analysis is only relevant to the three counterclaims that will move forward.

[11] As the Smith Parties recognize (ECF 37 at 3, n.1), under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'"  *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted). In other words, "fraudulent inducement is simply a means of committing fraud."  *Id.* at 432, 832 A.2d at 261–62.

Amended Answer, at 15–23.   In moving to dismiss the counterclaims, the Smith Parties argue that OBM has not met the requirements for joinder of the Smith Parties under Fed. R. Civ. P. 19 or Fed. R. Civ. P. 20.   ECF 37, Motion to Dismiss, ¶ 8.   In particular, the Smith Parties contend that Rule 19 has not been satisfied because neither Smith, P.C. nor Smith "has any obligations under the Note," and that "[s]hould either current party prevail regarding the note, the relief would be complete."   ECF 37, ¶ 9.   The Smith Parties also argue that OBM has not met the "'same transaction' requirement of Federal Rule 20 to permit joinder."   *Id.* ¶ 8.   Thus, the Smith Parties assert that they "should be dismissed from this action."   ECF 37, ¶ 14.

OBM maintains that the counterclaims satisfy both Rule 19 and Rule 20.   ECF 40, Opposition-Motion to Dismiss, at 2–3.   In its view, the Promissory Note "is a sham" and "a component" of the "scheme to misappropriate funds" that was devised by Smith when he served as OBM's general counsel.   *Id.* at 2.   Moreover, OBM maintains that the Smith Defendants "are necessary parties because they allegedly caused, aided, or abetted in the creation of the sham promissory note. . . ."   *Id.* at 2.

As to Rule 19, OBM argues that joinder of the Smith parties "is necessary to afford complete relief to the parties" (*id.* at 7), and that joinder is "proper because having these claims tried separately could negatively impact OBM's ability to defend the case."   *Id.* at 9. Alternatively, OBM asserts that "this case clearly meets the standard for permissive joinder under Rule 20."   *Id.* at 10.   According to OBM, "the counterclaim involves the same series of transactions" at issue in K & S's suit, and there are "many common questions of facts and law at issue in the Complaint and the counterclaim."   *Id.* at 11.

---

[12]   In Maryland, "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries."   *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521 (1997).

Fed. R. Civ. P. 19 governs required joinder.  It states, in relevant part:

(a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.

> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

As discussed by the Fourth Circuit in *Teamster Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915 (4th Cir. 1999), "[b]y forcing a court to examine the effects of a suit on parties not before it, Rule 19 of the Federal Rules of Civil Procedure 'takes . . . account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases.'" *Id.* at 918 (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 (1968)). Further, the Court explained that "Rule 19 creates a two-step inquiry: first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration;[] and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence.[]  If it cannot, the party is indispensable and the action should be dismissed." *Teamster Local Union No. 171*, 173 F.3d at 917–18 (internal quotations omitted); *see also Am. Gen. Life and Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (discussing Rule 19 joinder requirements).

Permissive joinder is governed by Fed. R. Civ. P. 20.  It provides:

(a) Persons Who May Join or Be Joined.

   (1) *Plaintiffs.* Persons may join in one action as plaintiffs if:

      (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

      (B) any question of law or fact common to all plaintiffs will arise in the action.

   (2) *Defendants.* Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants if:

      (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

      (B) any question of law or fact common to all defendants will arise in the action.

   (3) *Extent of Relief.* Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Rule 20 also creates a two-prong test for joinder of defendants: "Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and* any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2) (emphasis added).

In *Aleman v. Chugach Support Servs., Inc*., 485 F.3d 206 (4th Cir. 2007), the Court stated: "Rule 20 gives courts wide discretion concerning the permissive joinder of parties, and should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* at 218 n.5 (internal

quotations and alterations omitted).  *See also Kennedy v. Lasting Paints, Inc.*, 404 Md. 427, 444, 947 A.2d 503, 513 (2008).

As an initial matter, it is unnecessary to analyze joinder pursuant to Rule 19 because the joinder challenge for the five counterclaims can be resolved under the more lenient standard provided in Rule 20.  *See, e.g.*, *Lanier Bus. Prod. v. Graymar Co*., 342 F. Supp. 1200, 1202 n.7 (D. Md. 1972) (noting that because the parties met the requirements for Rule 20 "there is no need to determine whether they would meet joinder requirements of Rule 19, since the two rules provide alternative means of adding parties to a suit"); *see also* 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1604 (3d ed. 2001, 2016 Supp.) ("WRIGHT & MILLER") (describing the Rule 20 permissive joinder test as "much broader and encompassing" than that for Rule 19).

As to the counterclaims of fraud, fraud in the inducement, and for declaratory relief, OBM has satisfied the two-prong inquiry under Rule 20.  Regarding the first prong, the counterclaims involve the same Note at issue in the Complaint, and the same "transactions or occurrences" that led to the origination and execution of the Note.  As to the second prong, there are several common questions of law and fact regarding the claims and counterclaims, including the role of the Smith Parties in the execution of the Note and the validity of the Note.  In particular, Smith allegedly wore two hats:  he is a principal of the payee, K & S, and he allegedly represented or advised OBM in connection with the transaction.  These factors support joinder as to the counts of fraud, fraud in the inducement, and declaratory relief, each of which relates to the "same transaction or occurrence" at issue in the suit, and involve common questions of law and fact as to the Note's validity.  *See* Fed. R. Civ. P. 20; *see also* ECF 19, Amended Answer, at 15, 17, 21.

Indeed, it would be exceedingly inefficient, if not problematic, for OBM *not* to join the Smith Parties as to these three counterclaims.  A determination as to the validity of the Note necessarily requires consideration of the fraud claims.  Severing these claims would result in the kind of duplication that the liberal joinder rules were meant to prevent.  *See Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citations omitted).  Indeed, severing the claims would require OBM to proceed on separate but redundant tracks, which would "result in the duplication of evidence, increase the cost of litigation, and carries with it the potential for inconsistent verdicts." *Reuter v. Medtronics, Inc.*, WJM-10–3019, 2010 WL 4628439 (D.N.J. Nov. 5, 2010), *report and recommendation adopted*, 2010 WL 4902662 (D.N.J. Nov. 23, 2010); *see also Baltimore & Ohio R.R. Co. v. Cent. Ry. Servs.*, 636 F. Supp. 782, 786–87 (E.D. Pa. 1986) (addressing expediency of joinder when a third-party defendant allegedly "caused, aided, or abetted" a plaintiff's wrongdoing).  Thus, as to the counterclaims of fraud, fraud in the inducement, and declaratory relief, joinder of the Smith Parties is appropriate.

However, as to the counterclaims for legal malpractice and breach of fiduciary duty (collectively, "Professional Misconduct Claims"), I am not persuaded that the requirements for joinder have been met under Rule 19.  And, in the exercise of my discretion, I decline to permit joinder under Rule 20.

The claims of legal malpractice and breach of fiduciary duty are conceptually distinct from the issues in this case, and resolution of those claims are not integral to a determination of the validity of the Note.  *See Hall v. Sullivan*, 272 Fed. App'x 284, 288 (4th Cir. 2008) (discussing the multi-part standard implicated "to recover against an attorney for legal malpractice in Maryland") (citations omitted); *Bank of New York v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004) (acknowledging the three-year statute of limitations for legal

malpractice and breach of fiduciary duty claims in Maryland).   Notably, even if OBM could prevail as to the Professional Misconduct Claims, this would not necessarily relieve OBM of its contractual obligation to K & S.   Rather, success might give rise to a claim by OBM for indemnification from the Smith Parties.   And, OBM's fraud claims do not turn on or require resolution of the Professional Misconduct Claims.

The Professional Misconduct Claims present distinct legal issues, and adding them to this case would unnecessarily complicate the case and cause confusion as to the breach of contract and fraud claims.   Therefore, I will grant the Smith Parties' Motion to Dismiss as to the counterclaims of legal malpractice and breach of fiduciary duty.   I express no opinion as to any right OBM may have to pursue the two claims in an alternative forum.

### 2. Counterclaim Jurisdiction

I turn to the Smith Parties' jurisdictional challenge, as it pertains to the three remaining counterclaims.

Under Fed. R. Civ. P. 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction raises the issue of "whether the court has the competence or authority to hear and decide the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).   Upon a challenge to jurisdiction, the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex. rel. Vuyyuru v. Jadhau*, 555 F.3d 337, 347 (4th Cir. 2009), *cert. denied*, 558 U.S. 875 (2009); *cf. Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New York*, ___ F.3d ___, 2016 WL 2343251, at *5 (4th Cir. May 4, 2016).   A "district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

law.'" *Evans*, 166 F.3d at 647 (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  They "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  The question of subject matter jurisdiction may be raised by the parties or the court, *sua sponte,* at any stage of the litigation.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *see Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 197 (4th Cir. 2008).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.,* 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Evans*, 166 F.3d at

647. That is, "the court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted), *aff'd*, 85 Fed. App'x 960 (4th Cir. 2004) (citations omitted).

The Smith Parties appear to bring a facial challenge under Rule 12(b)(1) in their assertion that OBM failed to "demonstrate proper subject matter jurisdiction . . . ." ECF 37, Motion to Dismiss, ¶ 6. In considering a facial challenge to subject matter jurisdiction, "'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.' In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192 (citations omitted); *see also Lufti v. United States*, 527 Fed. App'x 235, 241 (4th Cir. 2013); *Hasley v. Ward Mfg.*, RDB-13-1607, 2014 WL 3368050, at *1– 2 (D. Md. July 8, 2014); *Buchanan*, 125 F. Supp. 2d at 736.

Whether a complaint states a claim for relief under Rule 12(b)(6) is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*,___U.S.___, 135 S. Ct. 346, 346 (2014) (per curiam). But, the rule

demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.  In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Goines v. Valley Cmty. Servs. Bd.*, ___F.3d___, 2016 WL 2621262, at *3 (4th Cir. May 9, 2016); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011); *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

K & S asserts jurisdiction based on diversity.  ECF 1, ¶ 1.  According to OBM, K & S is incorporated in Maryland, with its principal place of business in Maryland.  ECF 19, Amended Answer, at 11.  OBM is incorporated in California, with its principal place of business in Tennessee.  ECF 1, ¶ 1; ECF 19 at 11.  Additionally, K & S is seeking $1,000,000 in damages. ECF 1, ¶ 8.

As to the claims lodged by K & S, this Court obtains diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  "It is well-settled . . . that the amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit."  14AA WRIGHT & MILLER § 3702.5 (4th ed. 2011); *see also Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC*, 491 F.3d 171, 176 (4th Cir. 2007) ("The black letter rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears

or is in some way shown that the amount stated in the complaint is not claimed in good faith.")
(citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) (internal quotations omitted)).

When a suit is filed in federal court based on diversity jurisdiction, and a counterclaim is then filed, the question arises as to whether diversity jurisdiction extends to the counterclaim. This depends on whether the counterclaim is permissive or compulsory. *See Sue & Sam Mfg. Co. v. B-L-S Constr. Co.*, 538 F.2d 1048, 1050–1051 (4th Cir. 1976). Fed. R. Civ. P. 13 governs this inquiry.

Under Fed. R. Civ. P. 13(a), a compulsory counterclaim must be asserted "against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" *Sue & Sam Mfg. Co.*, 538 F.2d at 1050. As to a permissive counterclaim, Fed. R. Civ. P. 13(b) "permits the filing of a counterclaim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Id.* at 1050–51.

When a counterclaim is deemed compulsory under Fed. R. Civ. P. 13(a), independent grounds for jurisdiction need not be established. *Id.* at 1051 (explaining that asserting a counterclaim is "subject to the qualification that a permissive counterclaim must have an independent jurisdictional base,[] while a compulsory counterclaim need not have") (citations omitted); *see also* 14AA WRIGHT & MILLER § 3706 ("Since a compulsory counterclaim almost certainly will fall within the supplemental jurisdiction of the federal courts as defined in Section 1367(a) of the Judicial Code and does not require an independent basis of federal subject matter jurisdiction,[] the district court may hear the counterclaim regardless of whether it also independently satisfies the amount in controversy requirement.[]") (Citations omitted).

In *Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988), the Fourth Circuit outlined several questions that guide the determination of whether a counterclaim is compulsory or permissive: "(1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would *res judicata* bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?" *Id.* at 331 (citing *Sue & Sam Mfg. Co.*, 538 F.2d at 1051–53); *see Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 452 (D. Md. 2014). Notably, a "court need not answer all these questions in the affirmative for the counterclaim to be compulsory. Rather, the tests are less a litmus, more a guideline." *Painter*, 863 F.2d at 331 (citations omitted).

I am satisfied that OBM's three remaining counterclaims are compulsory under the Fourth Circuit's four-question guideline. *Painter*, 863 F.2d at 331.

Under question one, it appears that issues of law and fact raised in the original claim and the counterclaims are largely the same. As discussed, the origin of the Note, and allegations of wrongdoing in regard to its execution, are engrained in the original claim and counterclaims. Thus, answering question three, the same evidence will likely be used to support or refute the claim and the counterclaims. Indeed, the parties have already duplicated submissions in support of their respective positions. *Compare* ECF 9-1, Olhausen Declaration, at 8–21, *with* ECF 35-4, 35-5, 35-6, 35-7 (K & S's duplicative filings for an unrelated motion). Additionally, the counterclaims call into question the validity and the enforceability of the Note. Therefore, there is a relationship between K & S's claim and OBM's counterclaims. With three of the four questions answered affirmatively, I am satisfied that OBM's counterclaims are compulsory. *See*

*Painter*, 863 F.2d at 331.  Accordingly, under Fed. R. Civ. P. 13(a), independent grounds for jurisdiction need not be established.

However, even if an independent basis for jurisdiction were required, diversity jurisdiction appears independently valid as to the counterclaims.  Indeed, the Smith Parties seem to concede their citizenship is diverse from that of OBM, because they dispute only the amount in controversy in their argument challenging subject matter jurisdiction.  *See* ECF 37, ¶¶ 4–6; *see also* ECF 19, ¶¶ 3, 4 (asserting that the Smith Parties hold Maryland citizenship).  The Smith Parties contend only that OBM "has failed to sufficiently plead damages exceeding $75,000" in the counterclaims.  I disagree.

OBM states that Olhausen's IRA "held at least $789,725.40" (ECF 19, ¶ 11), which OBM alleges was transferred at the direction of Smith as part of a "conspiracy and scheme." ECF 19, ¶ 16.  OBM's counterclaims also refer to funds received by OBM, in the amounts of $200,000; $250,000; $100,000; and $100,000.  ECF 19, ¶ 14.   The discrepancy between these totals easily exceeds $75,000, and can be deemed "the direct pecuniary value of the right" OBM seeks in the counterclaims.  14AA WRIGHT & MILLER § 3702.5; *see also Choice Hotels*, 491 F.3d at 176.

In sum, the challenge to jurisdiction lacks merit; "sufficient facts" have been provided to "invoke subject matter jurisdiction" as to the Smith Parties.  *Kerns*, 585 F.3d at 192 (citations omitted); *see also Lufti*, 527 Fed. App'x at 241; *Hasley*, RDB-13-1607, 2014 WL 3368050, at *1–2; *Buchanan*, 125 F. Supp. 2d at 736.   For all these reasons, the Smith Parties' Motion to Dismiss is denied as to the three remaining counterclaims.

**B. Motion to Join and Motion to Strike**

As noted, K & S has filed a Motion to Join Donald Olhausen as a defendant/counter-plaintiff, pursuant to Fed. R. Civ. P. 20.  ECF 49, Motion to Join.  K & S avers that "Donald Olhausen has filed Affidavits alleging that his funds were adversely impacted by the actions of K & S Real Properties" and that there "is no allegation in any of the Counter-Complaints that any of the monies at issue in this case were acquired from Olhausen Billiard Manufacturing, but rather that all of the funds in question were those of Donald Olhausen."  ECF 49-1 at 2. According to K & S, "the continued infusion of claims by Olhausen Billiard Manufacturing which are, more properly the claims of Donald Olhausen who asserts that the funds in question were his personal property, dictates that Donald Olhausen be made a party to this action." *Id.*

OBM opposes the Motion to Join because, "[p]rior to K & S filing its Motion to Join, Mr. Olhausen had already filed a parallel lawsuit in Tennessee state court."  ECF 51, Opposition-Motion to Join, ¶ 2; *see also* ECF 51-2 (including a copy of the Tennessee case complaint). Therefore, according to OBM, "pursuant to the First-to-File doctrine,[13] K & S cannot force Mr. Olhausen to bring his claims in this action[.]"  *Id.*  Further, OBM avers that the "*Colorado* Abstention Doctrine dictates that Mr. Olhausen's claims be heard in Tennessee."  *Id.* ¶ 3.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 812–820 (1976). Additionally, OBM asserts that "K & S failed to establish that this Court has personal jurisdiction over Mr. Olhausen."  *Id.* ¶ 4.  To support this assertion, OBM submitted the Second Olhausen Declaration.  ECF 53; *see also* note 4. Olhausen avers, ECF 53, ¶ 3:

---

[13] The First-to-File doctrine refers to a rule used to determine "which of two identical or substantially similar suits should proceed."  *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330, 337 (D. Md. 2011).  Generally, the rule affords "priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Id.* As discussed, *infra*, the First-to-File Rule is not implicated in resolving the pending motions.

> My only contact with Maryland was created by Attorney Smith, and it was with regard to the transactions that are the subject of [this] lawsuit . . . . I never traveled to Maryland in connection with the transactions that are the subject of the . . . lawsuit.

In its Reply, K & S counters that the First-to-File rule does not apply because the Tennessee "Complaint does not name K & S Real Properties as a party . . . ." ECF 54 at 1–2; *see also id.* at 4. K & S also avers, *inter alia*: "It is undisputed in this matter that Tennessee has no jurisdiction over K & S Real Properties or over Timothy Guy Smith, a resident of the State of Maryland." *Id.* at 3.

In addition, K & S seems to claim that Olhausen has already been added to this case by having provided declarations in support of OBM. *See, e.g.*, ECF 54 at 6. K & S insists that Olhausen and OBM have "mixed their allegations" (ECF 54 at 6), and that Olhausen has "consented to the jurisdiction of this Court and has intentionally utilized the mechanism of Counter-Complaint [sic] to set forth his personal allegations before this Court against K & S Real Properties, Timothy Guy Smith and Timothy Guy Smith, P.C." *Id.*; *see also id.* at 7. In sum, K & S has "alleged that this Court has obtained jurisdiction of Mr. Olhausen through his filing of a Counter-Complaint under the guise of Olhausen Billiard Manufacturing" and that no exceptions apply to alter this assertion. *Id.* at 7–8.

As noted, OBM sought leave to file a Surreply "in order to fully brief the Court on the issues before the Court and to explain why various arguments raised in K & S's Reply lack merit.[]" ECF 60 at 1. Leave was granted. ECF 62. In the Surreply, OBM stated: "K & S tacitly admitted that it cannot use FRCP Rule 20(a) to force Mr. Olhausen to join as a plaintiff by not addressing this issue in its Reply." ECF 60-2 at 2. OBM also argued, *inter alia*, that the parties need not be identical for the First-to-File rule to apply. ECF 60-2 at 2–3. Further, OBM

contends that the question of Tennessee jurisdiction over K & S is irrelevant because K & S is not a party to the Tennessee case.  *Id.* at 4–5.

Thereafter, as noted, K & S filed a Motion to Strike, asking the Court to strike OBM's Surreply.  ECF 63.  K & S's primary disagreement with the Surreply is that K & S's Reply did not include any new assertions.  ECF 63-1 at 1–3.  OBM counters that the Surreply was indeed used to address new contentions that K & S advanced in the Reply.  ECF 64 at 1.

Local Rule 105.2(a) provides that parties are not permitted to file surreply memoranda in courts of this District without permission of the court.  Thus, "[a]llowing a party to file a sur-reply is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored."  *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g.*, *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013).  A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted); *see Khoury*, 268 F. Supp. 2d at 605.

K & S's Motion to Strike is difficult to discern.  In the supporting memorandum, K & S argues that OBM's Surreply is unwarranted because K & S's Reply did not include any new issues.  K & S asserts, for example, ECF 63-1 at 2: "There is no allegation by Olhausen Billiard Manufacturing that any arguments were raised for the first time in the opposing party's reply. That is glaringly lacking from the Motion filed in this case.  Also lacking is any statement in its Sur-Reply indicating that any argument raised by K & S Real Properties was raised for the first time in its Reply . . . Again, no allegation that it was raised for the first time in the Reply. . . ."  It adds, *id.*: "In short, nothing in the Sur-Reply of Olhausen Billiard Manufacturing serves any

purpose or addresses any issue which was allegedly raised for the first time in the Reply of

K & S Real Properties." These assertions are patently inaccurate.

As OBM points out, K & S's Reply *does* contain new arguments. In OBM's Opposition-

Motion to Strike, OBM highlights examples of new arguments in K & S's Reply, as follows,

ECF 64 at 2 (emphasis in original):

> New Argument No. 1: that the "First-to-File" doctrine should not be
> followed because the instant case and Mr. Olhausen's Tennessee lawsuit are not
> identical;

> New Argument No. 2: that K & S is not a party in Mr. Olhausen's
> Tennessee lawsuit[] and therefore K & S claimed that the "First-to-File" doctrine
> and the *Colorado* Abstention doctrine are inapplicable;

> New Argument No. 3: that the claims in Mr. Olhausen's Tennessee
> lawsuit were brought as a preemptive strike to bringing such claims in the instant
> lawsuit; and

> New Argument No. 4: that Tennessee does not have jurisdiction over
> K & S or Timothy Smith.

I am persuaded that granting leave to OBM to file the Surreply was neither an abuse of

discretion nor error, and that the Surreply was warranted to provide OBM with an opportunity to

"contest matters presented to the court for the first time in the opposing party's reply." *Clear

Channel Outdoor, Inc.*, 22 F. Supp. 3d at 529; *see also Khoury*, 268 F. Supp. 2d at 605; ECF 62.

Accordingly, I shall deny the Motion to Strike.

I turn to the Motion to Join.

K & S seeks joinder of Olhausen as a defendant/counter-plaintiff under Fed. R. Civ. P.

20, based largely on facts that the Smith Parties have disputed in their Motion to Dismiss. *See,

e.g.*, ECF 51 at 11. In particular, in the Motion to Dismiss, the Smith Parties argue that their

dealings with Olhausen did *not* involve the "same transaction or occurrence" as execution of the

contested Note.  ECF 37, ¶ 10.  Yet, in the Motion to Join, K & S argues that those events *do* qualify as the "same transaction or occurrence" under the same Rule.  ECF 49-1 at 1–2.

Although the parties have presented a flurry of allegations regarding, *inter alia*, jurisdiction in the Tennessee state court system, the First-to-File rule, and the *Colorado* abstention doctrine, there is no need to reach these issues to resolve the Motion to Join.  As explained, "Rule 20 gives courts wide discretion concerning the permissive joinder of parties, and should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  *See Aleman*, 485 F.3d at 218 n.5.

As noted, Rule 20 states, in relevant part:  "Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  K & S has not advanced any legally sound basis to join Olhausen as a defendant in its breach of contract case.  Indeed, the Motion to Join is imprecise and largely unsupported.  *See* ECF 49; ECF 49-1.

As indicated, the Complaint advances only a breach of contract claim against OBM. K & S's claim for relief against OBM does not make Mr. Olhausen a "proper party to this action." ECF 49-1 at 2. As K & S itself acknowledges, "the Plaintiff's Complaint refers only to this collection [sic] of a Promissory Note . . . ." ECF 49-1 at 2.  It seeks to enforce the Note against the borrower – OBM – a corporate entity.  *See* ECF 1 at 1.  Indeed, the Complaint does not even mention Mr. Olhausen.  *See generally* ECF 1.  Although K & S does not specify a claim to which it wants to join Mr. Olhausen, there is no apparent basis for asserting the breach of contract claim against Olhausen personally.  *Id.*

Moreover, as noted, in the context of K & S's earlier summary judgment motion (ECF 7), K & S itself stated: "Any and all other issues related to Donald Olhausen's IRA related to Donald Olhausen personally, related to conflicts of interest, have no bearing upon the primary issue in this case, namely the loaning of funds and the lack of repayment thereon." ECF 35-1, reply memorandum in support of K & S's summary judgment motion, at 2. K & S has not advanced any compelling argument to now assert otherwise.

Olhausen's submission of declarations in support of OBM does not amount to an appearance in the case; it is nothing more than a sworn statement by a corporate agent or witness who has knowledge of facts that may be relevant. *See* ECF 9-1; ECF 44-1; ECF 51-1; *see also* 10A WRIGHT & MILLER § 2686 (3d ed. 1998, Supp. 2016) (discussing, in the context of a default judgment, that "[n]ormally, an appearance in an action involves some presentation or submission to the court" but that "[d]espite the general liberality in defining what conduct constitutes an appearance, not every act by a party that is addressed to the court or relates to the litigation will be deemed an appearance") (internal citations and quotations omitted); *cf. Dynamis, Inc. v. Dynamis.com*, 780 F. Supp. 2d 465, 469 (E.D. Va. 2011); ("[B]ecause [a party] has clearly and timely objected to personal jurisdiction, his appearance in [a] matter does not operate as consent to personal jurisdiction . . . . Well established law permits a defendant to appear for the limited purpose of challenging personal jurisdiction provided the jurisdictional objection is timely raised.") (citing *Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199, 207–208 (4th Cir. 1967)).

Obviously, a corporation must speak through statements of authorized representatives. Olhausen's declarations do not constitute an "infusion of claims" (ECF 49-1 at 2) that implicate Olhausen, nor has K & S provided any reasonable or reliable support to suggest why that would

be the case.  *See* ECF 49; ECF 49-1.  Indeed, K & S's argument would turn the protections afforded to corporate representatives on their head.

In Maryland, a corporation and its stockholders—including a single stockholder—are wholly separate entities.  Their liabilities are also separate.  *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co.*, 540 F.2d 681, 683 (4th Cir. 1976).  The fiction of the wholly separate corporate form is jealously guarded by courts.  To be sure, a party may seek to pierce the corporate veil to reach an individual when "'necessary to prevent fraud or enforce a paramount equity.'"  *Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 733, 838 A.2d 1204, 1209 (2003) (citations omitted).  However, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil."  *Residential Warranty Corp.* v. *Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 309, 728 A.2d 783, 790–91 (1999).  The "[p]ower to pierce the corporate veil is to be exercised 'reluctantly' and 'cautiously,'" *DeWitt Truck Brokers, Inc.*, 540 F.2d at 683 (citation omitted), and the challenge facing a party seeking to pierce the corporate veil has been described as "herculean."  *Dixon v. Process Corp.*, 38 Md. App. 644, 645–46, 382 A.2d 893, 894–95 (1978) ("A commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving maximum profit with a minimum exposure to liability[] . . . [W]oe unto the creditor who seeks to rip away the corporate facade. . . .").

The Motion to Join does not include any factual basis to justify piercing the corporate veil so as to hold Olhausen personally liable for the alleged debt of OBM.  *See* ECF 49; ECF 49-1.  This case concerns a contract dispute; the Motion to Join does not include any allegations of fraud or paramount equity or any other convincing arguments that would warrant a suit against Olhausen as OBM's President.  Thus, the Motion to Join Olhausen is denied.

### III. Conclusion

For the foregoing reasons, I will deny the Smith Parties' Motion to Dismiss in part, and grant it in part (ECF 37).  And, I will deny K & S's Motion to Join (ECF 49) and Motion to Strike (ECF 63).

A separate Order follows, consistent with this Memorandum.


Date:  June 7, 2016                                          _____/s/_____

                                                            Ellen L. Hollander
                                                            United States District Judge